FILED

MAY 0 8 2015

CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY                                    DEPUTY

1  PAUL A. CADROBBI
   CYHNTHIA L. CUMMING
2  2408 Saratoga Street
   Oceanside, California 92054
3  Telephone:      (818) 205-6424

4  Plaintiff Pro Se

5

6

7

8              UNITED STATES DISTRICT COURT

9            SOUTHERN DISTRICT OF CALIFORNIA

10 PAUL A. CADROBBI, an            ) CIVIL NO.: 15CV1029 JAH BGS
   individual; CYHNTHIA L.         )
11 CUMMING, an individual,         ) PLAINTIFFS CADROBBI AND
                                   ) CUMMING'S VERIFIED COMPLAINT
12           Plaintiff,            )
                                   ) FRAUD
13      v.                         ) MISREPRESENTATION
                                   )
14 NATIONSTAR MORTGAGE, L.L.C., a  ) JURY TRIAL DEMANDED
   Delaware Limited Liability      )
15 Company; OCWEN LOAN SERVICING,  )
   LLC, a Delaware Limited         )
16 Liability Company; and DOES 1   )
   through 100, inclusive,         )
17                                 )
              Defendants.          )
18                                 )
                                   )
19                                 )
                                   )
20                                 )
                                   )
21                                 )
                                   )
22                                 )
                                   )
23                                 )
                                   )
24                                 )
                                   )
25                                 )
                                   )
26                                 )
                                   )
27                                 )
                                   )
28                                 )
   _____)

                          1
      PLAINTIFFS CADROBBI AND CUMMING'S VERIFIED COMPLAINT

1  COMES NOW Plaintiffs PAUL A. CADROBBI and CYHNTHIA L. CUMMING
2  ("PLAINTIFFS") and complains as follows:
3               I.    JURISDICTION AND VENUE
4      1.   The Court has jurisdiction over this matter pursuant to
5  28 U.S.C. Sections 1332(a) because the amount in controversy
6  exceeds $75,000 and no plaintiff shares a state of citizenship
7  with any defendant.
8      2.   The Court is the proper venue for this action under 28
9  U.S.C. Section 1391 because one or more of the Defendants either
10 resides in or maintains executive offices in this district and
11 all of the relevant real estate is located in this county.
12
13              II.   PARTIES
14     3.   Plaintiffs were and at all times herein mentioned are,
15 a resident of the County of San Diego in state of California and
16 the lawful owner of a parcel of real property commonly known as:
17 2408 Saratoga Street, Oceanside, California 92054 (hereinafter
18 "Subject Property").
19
20     4.   At all times herein mentioned, Defendant NATIONSTAR, is
21 and was, a Delaware limited liability company whose members are
22 domiciled in the state of Texas and whose principal place of
23 business is in the state of Texas and at all times herein
24 mentioned was conducting ongoing business in the state of
25 California and claims an interest adverse to the right, title and
26 interests of Plaintiffs in Subject Property.
27
28

PLAINTIFFS CADROBBI AND CUMMING'S VERIFIED COMPLAINT

5.    At all times herein mentioned, Defendant OCWEN, is and was, a Delaware limited liability company whose members are domiciled in the state of Florida and whose principal place of business is in the state of Georgia and at all times herein mentioned was conducting ongoing business in the state of California and claims an interest adverse to the right, title and interests of Plaintiffs in Subject Property.

### III. FACTUAL ALLEGATIONS

6.    On or about January 14, 2008, Plaintiffs entered into a mortgage loan with Taylor, Bean, and Whitaker Mortgage Corp ("TBWMC") attributed to MIN: 1000295-0002282351-6.  The mortgage loan ("Loan") contained no private mortgage insurance ("PMI") policy.  The Loan was secured by the Subject Property as evidenced by a Deed of Trust.  Neither the Loan nor Deed of Trust demonstrate the existence of a PMI policy.  See Exhibit 1.

7.    On or about August 9, 2009, Following TBWMC transferred the Loan to the Federal Deposit Insurance Corporation and the Loan was subsequently purchased by OCWEN.

8.    On or about August 24, 2009, TBWMC filed for Chapter 11 federal bankruptcy protection.

9.    As Plaintiffs made their mortgage payments to OCWEN, OCWEN proceeded to allocate payments towards a nonexistent PMI policy during the following time periods and in the following amounts:

   a. February 2010; $204.87; $216.87

b. February 2010; $204.87; $216.87

c. March 2010; $204.87; $216.87

d. April 2010; $204.87; $216.87

e. May 2010; $204.87; $216.87

f. June 2010; $204.87; $216.87

g. July 2010; $204.87; $216.87

h. August 2010: $204.78

i. September 2010; $228.05

j. October 2010; $241.05

k. November 2010$216.82

l. December 2010; $216.87

10.   As a result of Plaintiffs' illegitimate PMI policy payments, Plaintiffs' escrow payments increased from $534.31 in 2010 to $645.95 in 2011.

11.   Plaintiffs' loan balances randomly fluctuated.   On March 1, 2011, Plaintiffs' loan statement reflected a balance of $431,250.64.   A subsequent statement then reflected a loan balance of $417,888.88.   A subsequent loam statement then reflected a loan balance of $430,311.96.

12.   On or about June 12, 2012, Plaintiffs sent written correspondence to OCWEN requesting a copy of the PMI policy that OCWEN falsely purported to exist or a refund in lieu of providing such copy.   To date, OCWEN has failed to provide proof of a PMI policy or a refund of misappropriated escrow funds.

13.   OCWEN's PMI charges resulted in Plaintiffs' mortgage payment being increased to unaffordable levels.

14.   OCWEN's PMI charges resulted in Plaintiffs being subjected to unjustified interest and an unwarranted escrow balance.

15.   To date, OCWEN has failed to respond to Plaintiffs' various complaints, reduce Plaintiffs' escrow balance, or provide Plaintiffs with a refund of any nature.

16.   On or about May 16, 2013, OCWEN transferred the servicing rights to the Loan to NATIONSTAR.   See Exhibit 2.

17.   On or about June 14, 2013, Plaintiffs sent a written correspondence to NATIONSTAR requesting payment records.   On or about July 1, 2013, NATIONSTAR responded by providing Plaintiffs with a payment history detailing unwarranted PMI Policy charges that resulted in an inflated escrow balance.   See Exhibit 3.

18.   On or about April 20, 2014, Quality Service Loan Corporation sent Plaintiffs a Notice of Foreclosure.   See Exhibit 4.

19.   On or about July 24, 2014, Plaintiffs sent a complaint to the California Attorney General alleging fraud and negligence on NATIONSTAR's part.   See Exhibit 5.

20.   As a result of OCWEN and NATIONSTAR's actions, Plaintiffs risk the foreclosure of Subject Property, have had their credit reports negatively affected, and have suffered severe emotional distress and anxiety.

## IV.   CAUSES OF ACTION

FIRST CAUSE OF ACTION

(Fraud)

(As to Defendants OCWEN and NATIONSTAR)

21.   Plaintiffs reallege and incorporate by reference paragraphs 1 to 18 of this Complaint.

22.   Fraud occurs under any of the following circumstances: When there is an affirmative misrepresentation — the suggestion, as a fact, of that which is not true by one who does not believe it to be true; a concealment or half truth — the suppression of a fact, by one who is bound to disclose it or who gives information of other facts which are likely to mislead for want of communication of that fact; or a false promise — a promise made without any intention of performing it.

23.   Fraud also occurs when a defendant makes an untrue representation of a material fact without a reasonable ground for its truth or in a manner not warranted by the available information. Such a representation must be made with the intent that the plaintiff would and did rely on it, to his detriment and harm.

24.   In this matter, OCWEN affirmatively misrepresented material facts, knowing that its representations were false and by making their representations without reasonable grounds, with the intent that Plaintiffs would rely on their misrepresentations, all to Plaintiffs' harm.

25.   These affirmative misrepresentations were made knowingly by OCWEN through their customer services representatives.

26.   By way of billings and OCWEN perpetrated its fraud in actions which included but were not limited to the following activities, and as described with specificity in the factual allegations of this claim and the aforementioned factual statements on numerous occasions:

    a. OCWEN claimed the Loan contained a PMI policy and as a result, made a misrepresentation.

    b. OCWEN claimed Plaintiffs were due and owing payments to a nonexistent PMI policy and as a result, made a misrepresentation.

    c. OCWEN claimed funds paid to OCWEN were being applied to a PMI Policy and as a result, made a misrepresentation.

    d. OCWEN made a misrepresentation with respect to Plaintiffs loan balances in the following manner: On March 1, 2011, Plaintiffs' loan statement reflected a balance of \$431,250.64.  A subsequent statement then reflected a loan balance of \$417,888.88.  A subsequent loam statement then reflected a loan balance of \$430,311.96. The fluctuating loan balance is evidence that OCWEN made misrepresentations as to the correct loan balance.

PLAINTIFFS CADROBBI AND CUMMING'S VERIFIED COMPLAINT

27.   OCWEN's agents intended for Plaintiffs to rely on its misrepresentations in the following manners:

    a. OCWEN intended that Plaintiffs rely on its misrepresentations by repeatedly submitting billing statements to Plaintiffs that indicated a due and owing balance attributed to a PMI Policy.  Despite Plaintiffs' protests, Defendant was unwavering in billing for a PMI policy that did not exist.

    b. OCWEN intended that Plaintiffs rely on its misrepresentations by repeatedly submitting billing statements to Plaintiffs that indicated a false loan balance was due and owing.

28.   Plaintiffs justifiably relied on all of OCWEN's misrepresentations and omissions since OCWEN was a reputable mortgage servicer at the time.

29.   Plaintiffs were damaged as a result OCWEN's misrepresentations and omissions since Plaintiffs made numerous mortgage payments and a sizeable amount of each mortgage was improperly applied towards a nonexistent PMI Policy. As a result of such payments, Defendants have been unjustly enriched while Plaintiffs have incurred court fees to enforce their legal rights and have suffered the slander of their representation due to the fact that illegitimate foreclosure proceedings have been attributed to them and reported to credit reporting agencies and bureaus.

30. In this matter, NATIONSTAR affirmatively misrepresented material facts, knowing that its representations were false and by making their representations without reasonable grounds, with the intent that Plaintiffs would rely on their misrepresentations, all to Plaintiffs' harm.

31. These affirmative misrepresentations were made knowingly by NATIONSTAR through their customer services representatives.

32. By way of billings and NATIONSTAR perpetrated its fraud in actions which included but were not limited to the following activities, and as described with specificity in the factual allegations of this claim and the aforementioned factual statements on numerous occasions:

   a. NATIONSTAR claimed the Loan contained a PMI policy and as a result, made a misrepresentation.

   b. NATIONSTAR claimed Plaintiffs were due and owing payments to a nonexistent PMI policy and as a result, made a misrepresentation.

   c. NATIONSTAR claimed funds paid to NATIONSTAR were being applied to a PMI Policy and as a result, made a misrepresentation.

33. NATIONSTAR's agents intended for Plaintiffs to rely on its misrepresentations in the following manners:

   a. NATIONSTAR intended that Plaintiffs rely on its misrepresentations by repeatedly submitting billing

statements to Plaintiffs that indicated a due and owing balance attributed to a PMI Policy.  Despite Plaintiffs' protests, Defendant was unwavering in billing for a PMI policy that did not exist.

34.   Plaintiffs justifiably relied on all of OCWEN's misrepresentations and omissions since OCWEN was a reputable mortgage servicer at the time.

35.   Plaintiffs were damaged as a result OCWEN's misrepresentations and omissions since Plaintiffs made numerous mortgage payments and a sizeable amount of each mortgage was improperly applied towards a nonexistent PMI Policy. As a result of such payments, Defendants have been unjustly enriched while Plaintiffs have incurred court fees to enforce their legal rights and have suffered the slander of their representation due to the fact that illegitimate foreclosure proceedings have been attributed to them and reported to credit reporting agencies and bureaus.

## SECOND CAUSE OF ACTION

### (Misrepresentation)

### (As to all Defendants)

36.   Plaintiffs reallege and incorporate by reference paragraphs 1 to 33 of this Complaint.

37.   In this matter, OCWEN affirmatively misrepresented material facts, knowing that its representations were false and by making their representations without reasonable grounds, with

10

1  the intent that Plaintiffs would rely on their

2  misrepresentations, all to Plaintiffs' harm.

3       38.   These affirmative misrepresentations were made

4  knowingly by OCWEN through their customer service representatives

5  and agents.

6       39.   OCWEN perpetrated its misrepresentation actions which

7  included but were not limited to the following activities, and as

8  described with specificity in the factual allegations of this

9  claim and the aforementioned factual statements:

10          a. OCWEN claimed the Loan contained a PMI policy and as a

11             result, made a misrepresentation.

12          b. OCWEN claimed Plaintiffs were due and owing payments to

13             a nonexistent PMI policy and as a result, made a

14             misrepresentation.

15

16          c. OCWEN claimed funds paid to OCWEN were being applied to

17             a PMI Policy and as a result, made a misrepresentation.

18       40.   OCWEN's agents intended for Plaintiffs to rely on its

19  misrepresentations in the following manners:

20          a. OCWEN intended that Plaintiffs rely on its

21             misrepresentations by repeatedly submitting billing

22             statements to Plaintiffs that indicated a due and owing

23             balance attributed to a PMI Policy.  Despite

24             Plaintiffs' protests, Defendant was unwavering in

25             billing for a PMI policy that did not exist.

26

27

28

PLAINTIFFS CADROBBI AND CUMMING'S VERIFIED COMPLAINT

41. Plaintiffs justifiably relied on all of OCWEN's misrepresentations and omissions since OCWEN was a reputable mortgage servicer at the time.

42. Plaintiffs were damaged as a result OCWEN's misrepresentations and omissions since Plaintiffs made numerous mortgage payments and a sizeable amount of each mortgage was improperly applied towards a nonexistent PMI Policy. As a result of such payments, Defendants have been unjustly enriched while Plaintiffs have incurred court fees to enforce their legal rights and have suffered the slander of their representation due to the fact that illegitimate foreclosure proceedings have been attributed to them and reported to credit reporting agencies and bureaus.

43. In this matter, NATIONSTAR affirmatively misrepresented material facts, knowing that its representations were false and by making their representations without reasonable grounds, with the intent that Plaintiffs would rely on their misrepresentations, all to Plaintiffs' harm.

44. These affirmative misrepresentations were made knowingly by NATIONSTAR through their customer service representatives and agents.

45. NATIONSTAR perpetrated its misrepresentation actions which included but were not limited to the following activities, and as described with specificity in the factual allegations of this claim and the aforementioned factual statements:

a. NATIONSTAR claimed the Loan contained a PMI policy and as a result, made a misrepresentation.

b. NATIONSTAR claimed Plaintiffs were due and owing payments to a nonexistent PMI policy and as a result, made a misrepresentation.

c. NATIONSTAR claimed funds paid to NATIONSTAR were being applied to a PMI Policy and as a result, made a misrepresentation.

46. NATIONSTAR's agents intended for Plaintiffs to rely on its misrepresentations in the following manners:

a. NATIONSTAR intended that Plaintiffs rely on its misrepresentations by repeatedly submitting billing statements to Plaintiffs that indicated a due and owing balance attributed to a PMI Policy. Despite Plaintiffs' protests, Defendant was unwavering in billing for a PMI policy that did not exist.

47. Plaintiffs justifiably relied on all of NATIONSTAR's misrepresentations and omissions since NATIONSTAR was a reputable mortgage servicer at the time.

48. Plaintiffs were damaged as a result NATIONSTAR's misrepresentations and omissions since Plaintiffs made numerous mortgage payments and a sizeable amount of each mortgage was improperly applied towards a nonexistent PMI Policy. As a result of such payments, Defendants have been unjustly enriched while Plaintiffs have incurred court fees to enforce their legal rights

PLAINTIFFS CADROBBI AND CUMMING'S VERIFIED COMPLAINT

and have suffered the slander of their representation due to the fact that illegitimate foreclosure proceedings have been attributed to them and reported to credit reporting agencies and bureaus.

## V.   PRAYER FOR RELIEF

WHEREFORE, Plaintiffs prays as follows:

1.   For the Court to issue a temporary restraining order, a preliminary injunction, and/or a permanent injunction enjoining Defendant NATIONSTAR from engaging in any foreclosure activity with respect to Subject Property.

2.   For the Court to enter judgment in favor of Plaintiffs.

3.   For an accounting of all payments improperly paid by Plaintiffs to Defendants towards the nonexistent PMI policy that Defendants falsely purported to exist. Plaintiffs estimate this amount to exceed $30,000.

4.   For repayment of all payments improperly paid by Plaintiffs to Defendants towards the nonexistent PMI policy that Defendants falsely purported to exist. Plaintiffs estimate this amount to exceed $30,000.

5.   For repayment of all payments improperly paid by Plaintiffs to Defendants towards the improperly inflated insurance costs as a result of Plaintiffs overpayments towards a nonexistent PMI policy.

6.   For the Court to award Plaintiffs the monetary equivalent of attorney's fees and costs pursuant to *California Code of Civil Procedure* Sections 1021.5 and 1095, or otherwise.

7.   Special damages to account for Plaintiffs' severe emotional distress.

14

1    8.    Punitive damages.

2    9.    For such other and further relief as the Court deems

3 just and proper.

4

5 April 28, 2015

6

7    _____
     PAUL A. CADROBBI
     PLAINTIFF PRO SE
8

9    _____
10   CYHNTHIA L. CUMMING
     PLAINTIFF PRO SE
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                          15

1

**DEMAND FOR JURY TRIAL**

2    Plaintiffs request a jury trial on all issues raised in the

3  complaint.

4

5  April 28, 2015

6    PAUL A. CADROBBI
   PLAINTIFF PRO SE

7

8

9    CYNTHIA L. CUMMING
   PLAINTIFF PRO SE

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFFS CADROBBI AND CUMMING'S VERIFIED COMPLAINT

1

## VERIFICATION

2

I, PAUL A. CADROBBI declare:

3

1.    I am the Plaintiff in the above-entitled action.   I

4

have read the foregoing **"PLAINTIFF'S VERIFIED COMPLAINT"** and know

5

its contents.   I am informed and believe that the matters set

6

forth in that document are true and accurate, and on that ground,

7

I allege, to the best of my knowledge and information, that the

8

matters therein stated therein are true and accurate.

9

I declare under penalty of perjury under the laws of the

10

United States of America that the forgoing is true and correct.

11

Executed on April 28, 2015 at Oceanside, California.

12

13

14

PAUL A. CADROBBI
Declarant

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFFS CADROBBI AND CUMMING'S VERIFIED COMPLAINT

**VERIFICATION**

I, CYNTHIA L. CUMMING declare:

2.    I am the Plaintiff in the above-entitled action.  I have read the foregoing **"PLAINTIFF'S VERIFIED COMPLAINT"** and know its contents.  I am informed and believe that the matters set forth in that document are true and accurate, and on that ground, I allege, to the best of my knowledge and information, that the matters therein stated therein are true and accurate.

I declare under penalty of perjury under the laws of the United States of America that the forgoing is true and correct.

Executed on April 28, 2015 at Oceanside, California.


CYNTHIA L. CUMMING
Declarant

PLAINTIFFS CADROBBI AND CUMMING'S VERIFIED COMPLAINT